UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KARLENE HOGAN<br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>NOVARTIS PHARMACEUTICALS<br>CORPORATION,<br><br>　　　　　　　Defendant. | Civil Action No.:<br>1:06-cv-260-BMC-RLM |

### **NOVARTIS PHARMACEUTICALS CORPORATION'S MOTION FOR SANCTIONS**

Novartis Pharmaceuticals Corporation ("NPC") submits this motion for sanctions – including its incurred costs, expenses, and fees – after discovering that plaintiff's law firm Osborn Law, P.C. ("Osborn Law") forced NPC to defend claims through trial and on appeal that plaintiff Karlene Hogan had no standing to bring. In filings in this Court and in the United States Court of Appeals for the Second Circuit, plaintiff's counsel repeatedly represented that Mrs. Hogan was the Executor of her late husband Timothy Patrick Hogan's estate and, thereby, had standing to litigate his claims. *See, e.g.*, Hogan Complaint, ECF No. 1. However, no estate was ever opened in Mr. Hogan's name and Mrs. Hogan was never appointed an Executor under Rhode Island law. Accordingly, Osborn Law's deceptive pursuit of this lawsuit has forced NPC and three federal courts[1] to expend vast resources to address the claims of a party who never had standing.

Pursuant to Federal Rule of Civil Procedure 11, NPC served a copy of this motion on Osborn Law on July 20, 2013, providing plaintiff and her counsel with the required twenty-one day period to correct the inappropriate conduct. Plaintiff and her counsel have neither corrected

---

[1] Osborn Law has litigated this lawsuit before this Court, the United States District Court for the Middle District of Tennessee, and the United States Court of Appeals for the Second Circuit.

the representations nor notified NPC that it is mistaken in its factual assertions that Mrs. Hogan lacked authority to pursue these claims on behalf of her deceased husband Timothy Hogan. Accordingly, NPC hereby submits this motion for the Court's consideration.

## BACKGROUND

Osborn Law filed Mrs. Hogan's complaint on January 20, 2006 after the death of Mr. Hogan. *See* Complaint.[2] The Complaint alleged that Mrs. Hogan was the "surviving spouse and *Executor of the estate of Timothy Hogan,*" *id.* at 1 (emphasis added), and sought damages for injuries allegedly suffered by Mr. Hogan, *id.* at 4. Through this case's long history – inception, transfer as part of the Aredia® and Zometa® Products Liability Multi-District Litigation ("MDL"), remand after completion of coordinated pre-trial proceedings, trial in May 2011, first appeal resolved by the Second Circuit's September 19, 2012 affirmance, award of costs to NPC, and a second appeal of the order awarding costs pending before the Second Circuit[3] – Osborn Law attorneys have consistently submitted filings and represented under oath that Mrs. Hogan was the Executor of her husband's estate. *See, e.g.*, Complaint at 1 ("Plaintiff Karlene Hogan ('Plaintiff'), surviving spouse and Executor of the estate of Timothy Hogan"); Osborn Decl.,

---

[2] At the time of the filing of the Complaint, Osborn Law, P.C. was the law firm "Beatie and Osborn, LLP." Mr. Beatie, who left the firm in 2008, signed the Complaint on behalf of Mr. Daniel Osborn and Mr. Phillip Miller, both of whom continue to represent Mrs. Hogan under the name "Osborn Law, P.C."

[3] Despite the pending appeal before the Second Circuit, this Court retains jurisdiction to adjudicate this motion for sanctions because the issue of Mrs. Hogan's standing to litigate these claims is not one of the issues raised by plaintiff's appeal. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("the filing of a notice of appeal . . . confers jurisdiction on the Court of Appeals and divests the district court of its control over *those aspects of the case involved in the appeal.*") (emphasis added); *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 909 (5th Cir. 2011) ("An issue is generally an aspect of the case on appeal if it results in the district court's deciding an issue that the appellate court is deciding at the same time."); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (the resolution of a case does not divest district court of jurisdiction to impose sanctions).

Feb. 11, 2011, ECF No. 375 (caption listing "KARLENE HOGAN, Surviving Spouse and Executor of the Estate of Timothy Hogan"); Opposition to NPC's Bill of Costs, at 1, *Hogan v. Novartis Pharm. Corp.*, No. 1:06-cv-00260-BMC-RER (E.D.N.Y. Oct. 15, 2012), ECF No. 457 ("Defendant's application should be denied because Mrs. Hogan did not bring the case in her personal capacity. Instead, she brought the case in her capacity as executor of the estate of Timothy Hogan (the 'Estate'), her late husband."); Notice of Appeal of Costs Award, *Hogan v. Novartis Pharm. Corp.*, No. 1:06-cv-00260-BMC-RER (E.D.N.Y. Dec. 18, 2012), ECF No. 461 (caption listing "KARLENE HOGAN, Surviving Spouse and Executor of the Estate of TIMOTHY HOGAN, Deceased"); Dr. Steven Brown Jan. 16, 2008 Dep. Tr. 108:9-10 (Ex. 1) (Osborn Law attorney stating "I represent the estate [of Timothy Hogan]."); *see also* Trial Tr. at 10:9-12, 16:14-18, *Hogan v. Novartis Pharm. Corp.*, No. 06-cv-00260 (E.D.N.Y. May 9, 2011) (Ex. 2) (plaintiff's counsel failed to correct the record when this Court informed the jury that Mrs. Hogan was the "executor of the estate of Timothy Hogan").

    Mrs. Hogan, a resident and citizen of Rhode Island, does not have standing to prosecute her deceased husband's claims unless she has first been appointed an Executor of his estate. *See* RI GEN. LAWS § 9-1-7 (1956) (granting an Executor of an estate the right to sue on behalf of the decedent). NPC sought to gather documentation of Mrs. Hogan's status as Executor in preparation of its defense of Mrs. Hogan's second appeal, which alleges that she cannot be personally liable for costs because she sued NPC as Executor of the Hogan Estate. *See* Br. for Plaintiff-Appellant, at 2, 6, 11-12, *Hogan v. Novartis Pharm. Corp.*, No. 12-5085 (2d Cir. May 1, 2013), ECF No. 32 (Ex. 3). Upon investigation, NPC discovered that there was no documentation of Mrs. Hogan's alleged appointment and, further, no estate was ever opened in Mr. Hogan's name. *See* Decl. of Deputy Clerk of Coventry Probate Court, Coventry, RI (Ex. 4)

("The absence of any listing of an estate for Timothy Patrick Hogan in the Coventry Clerks' Database indicates that no estate was ever opened in his name.").[4] Mrs. Hogan cannot be the Executor of her husband's estate without ever having opened an estate in her husband's name. *See* RI GEN. LAWS § 33-8-1 (1956); *Montgomery v. Virgadamo*, 77 A.2d 530, 532 (R.I. 1950) ("[A]n executor is without any authority to act until appointed by the probate court and qualified under the law").[5]

## ARGUMENTS AND AUTHORITIES

I. **The Court Should Award Defendant its Costs and Attorneys' Fees as a Sanction Under Federal Rule of Civil Procedure 11.**

   A. <u>Osborn Law's claim that Mrs. Hogan had standing to sue NPC is unsupported by existing law.</u>

The extensive litigation of Mrs. Hogan's claims is premised upon Osborn Law's repeated assertions that Mrs. Hogan took certain steps to attain legal status to sue NPC. These assertions were false when made, are entirely without evidentiary support, and are not warranted by existing law. Osborn Law purported to represent the "Executor" of Mr. Hogan's estate, making use of a Rhode Island law that carves out an exception to the general standing requirement of a

---

[4] In Rhode Island, only the probate court of the city or town where the decedent lived at the time of his or her death can probate a decedent's will and open an estate in their name. R.I. GEN. LAWS. § 8-9-11 (1956). As Mr. Hogan was a resident of Coventry, Rhode Island at the time of his death, *see* Hogan Death Certificate (Ex. 5), the Coventry Probate Court is the only court that has jurisdiction to probate Mr. Hogan's will.

[5] Further, Mrs. Hogan cannot now become the Executor of her husband's estate because her failure to open an estate in the six years since his death results in a legal declination of the office of Executor. *See* R.I. GEN. LAWS § 33-8-3 (1956) ("If a person named as executor in a will and having possession thereof neglects or refuses to present the will for probate within thirty (30) days after the decease of the testator . . . that neglect or refusal shall be deemed a declination of the office by the executor."); *Paola v. Probate Court of Cranston*, No. P.A. 4288, 1984 WL 559216 (R.I. Super. Ct. Mar. 20, 1984) (probate court denied application to be appointed Executor of an estate to pursue a lawsuit because of a three-and-one-half-year delay in probating the will).

live plaintiff who has suffered an actual injury. *See* RI GEN. LAWS § 9-1-7 (1956). Contrary to plaintiff's counsel's declarations, Mrs. Hogan never opened an estate in Mr. Hogan's name and she was never appointed Executor.

The only explanation that Osborn Law's attorneys could possibly proffer at this point – that they relied upon a representation of their client that she was the Executor of her husband's estate – would be wholly insufficient. First, it is solely the lawyer's purview to know and understand the legal contentions made in a given case. *See, e.g.*, Fed. R. Civ. P. 11(c)(5)(A) (a court must not hold a client responsible for an attorney's unwarranted legal contentions); *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1492 (8th Cir. 1994) (counsel is responsible to know whether facts give rise to a legal claim). Osborn Law cannot foist blame upon Mrs. Hogan for its own failure to know whether she had legal standing. Second, Rule 11 (as well as Rule 1.1 of the New York Rules of Professional Conduct) requires an attorney to make "an inquiry reasonable under the circumstances" of any contention submitted to a federal court. Fed. R. Civ. P. 11(b); *see O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990) ("Rule 11 imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before actually signing it."); *Ahmed v. Gateway Grp. One*, No. 12 Civ. 0524(BMC), 2012 WL 2061601, at *4 n.1 (E.D.N.Y. June 7, 2012) ("But Rule 11 requires an attorney to determine whether a claim is warranted by existing law prior to filing a complaint."); N.Y. R. of Prof'l Conduct 1.1 ("A lawyer should provide competent representation to a client. Competent representation requires . . . preparation reasonably necessary for the representation.").

Accordingly, Osborn Law's attorneys had a duty to make a reasonable inquiry into the accuracy of their client's claims. They obviously made no such inquiry, because a simple search

of the Coventry County Probate Court records reveals that no estate was ever opened for Mr. Hogan.

  B.  <u>Osborn Law's attorneys' false representation of their client's standing warrants substantial sanctions.</u>

NPC is entitled to its costs, fees, and expenses incurred in defending this fraudulent litigation. *See United States v. Carley*, 783 F.2d 341, 344-45 (2d Cir. 1986) (discussing the 1983 amendments to Rule 11, which added attorneys fees and expenses to the list of reasonable sanctions, stating "[t]he new language [in Rule 11] is intended to reduce the reluctance of courts to impose sanctions . . . by emphasizing the responsibilities of the attorney and reinforcing those obligations by the imposition of sanctions." (quoting 1983 advisory committee's note)); *Bartel Dental Books Co., Inc. v. Schultz*, 786 F.2d 486, 490 (2d Cir. 1986) ("The district court probably would have erred if it had *not* awarded attorneys' fees to [defendants] under [Rule] 11." (citing *Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981) (trial court erred when it refused to award attorneys' fees to prevailing defendant where plaintiff's action was unreasonable and groundless, if not frivolous))).

Additionally, the 1993 advisory committee's note to Rule 11 dictates that several factors may be of proper consideration in a court's determination of sanctions for the purpose of penalizing Rule 11 violators. *See* Fed. R. Civ. P. 11 advisory committee's note; *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447 (1990) ("the central purpose of Rule 11 is to deter baseless filings in district courts"). Three of the factors enumerated in the committee note are of particular relevance to the circumstances of Osborn Law's conduct and signify the severity of the Rule 11 violation: (1) whether the improper conduct was a part of a pattern of activity, or was an isolated event; (2) whether it infected the entire pleading, or only

6

one particular count or defense; and (3) what effect it had on the litigation process in time or expense.

        1.        NPC recently uncovered this type of conduct practiced by Osborn Law attorneys throughout their involvement in the Aredia®/Zometa® litigation.

Osborn Law has made a practice of litigating cases in the Aredia®/Zometa® litigation on the basis of false assertions of its clients' legal authority to bring suit. Within the last six months, numerous courts have determined that many of Osborn Law's cases are worthy of dismissal after discovering that plaintiff's counsel misrepresented their clients' legal status. *See, e.g.*, Memorandum Op. and Order, at 6, *Jacqueline Wilson, whose death has been noticed v. Novartis Pharm. Corp.*, No. 4:12-cv-684-A (N.D. Tex. Feb. 15, 2013), ECF No. 81 (Ex. 6) (dismissing case after finding that the "order substituting [Mr. Osborn's clients] as the personal representatives of the estate of [deceased plaintiff] was obtained through deception practiced on the Middle District of Tennessee court by [Mr. Osborn's clients], acting through their counsel" and that plaintiff's counsel had not ensured that his clients were proper plaintiffs according to state law), *appeal filed*, No. 13-10309 (5th Cir. Mar. 18, 2013); *Spiese* Dismissal Order, *In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760 (M.D. Tenn. June 14, 2013), ECF No. 6739, *adopting and approving*, *Spiese* Report and Recommendation, *In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760 (M.D. Tenn. May 3, 2013), ECF No. 6630 (Ex. 7) (vacating previous substitution order and recommending dismissal of case due to Osborn Law's false statements and failure to properly substitute the plaintiff according to state law), *appeal filed*, No. 13-5941 (6th Cir. July 12, 2013); *Wilson* Dismissal Order, *In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760 (M.D. Tenn. May 13, 2013), ECF No. 6664, *adopting and approving*, *Wilson* Report and Recommendation, *In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760 (M.D. Tenn. Apr. 10, 2013), ECF No. 6568 (Ex. 8)

7

(detailing how plaintiff's counsel "grossly misled" the court by attempting to substitute their deceased client with her deceased husband, other "fraud[s] on the court", and plaintiff's counsel's overall failure to ensure a proper plaintiff); *Cole* Dismissal Order, *In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760 (M.D. Tenn. July 11, 2013), ECF No. 6804, *adopting and approving*, *Cole* Report and Recommendation, *In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760 (M.D. Tenn. June 10, 2013), ECF No. 6729 (Ex. 9) (finding that plaintiff's counsel misled the court and had not properly substituted their client so the case had not had a valid plaintiff in over five years), *appeal filed*, No. 13-6046 (6th Cir. Aug. 8, 2013). The falsehood here – the assertion that Mrs. Hogan was the Executor of her husband's estate – is not an isolated event but one instance in a series of dishonest practices by Osborn Law.

2. Osborn Law's false assertion of standing infects each of Mrs. Hogan's claims.

Unlike other sanctionable conduct that can be confined to a discrete element or claim of a lawsuit, plaintiff's counsel's false allegations of their client's standing to sue infects the entirety of Mrs. Hogan's suit. Indeed, if not for Osborn Law's sanctionable conduct, Mrs. Hogan's Complaint would have been dismissed as invalid. *See, e.g.*, *Connecticut v. Physicians Health Serv. of Conn., Inc.*, 287 F.3d 110 (2d Cir. 2002) (dismissing lawsuit because plaintiff did not suffer injury-in-fact required for Article III standing and did not satisfy statutory standing under the relevant statute).

3. The fraudulent assertion that Mrs. Hogan had the necessary legal authority to sue forced multiple federal courts and NPC to waste enormous amounts of time and expense.

Due directly to Osborn Law's false representations, extensive resources have been wasted to litigate this case. Over the course of this litigation, this Court has expended economic resources and time, including the significant resources necessary for trial. The MDL exercised

8

jurisdiction over this case for more than three years. The Second Circuit was also forced to adjudicate matters raised by plaintiff, and is still expending time and resources on Osborn Law's second appeal in this matter. This waste of resources gives rise to a need for severe sanctions. *See* Fed. R. Civ. P. 11 advisory committee's note (listing the effect that the sanctionable conduct had on time and expenses as important factor to consider when determining how great of sanctions to award); *see also Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 648 (7th Cir. 1992) (sanctioning plaintiff's law firm in the amount of defense counsel's attorneys' fees and expenses due to "[t]he enormous costs and time consumed by this case [that brought] further injury to our already overburdened legal system."). If not for Osborn Law's false statements, three federal courts and NPC would have been spared seven years of unnecessary and expensive litigation.

Osborn Law's attorneys, who are members of various bars and are officers of this Court, should be well aware of the Rule 11 requirement that attorneys make a reasonable inquiry into any representation submitted to a federal court. Further, both the MDL Case Management Order and an MDL Order issued in an Osborn Law case specifically required plaintiff's counsel to submit verification that all plaintiffs had the proper authority to pursue their lawsuits. *See* MDL Case Mgmt. Order, 12-13, *In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760 (M.D. Tenn. July 28, 2006), ECF No. 89 (Ex. 10); *see also Green* Order, 1-2, *In re: Aredia® and Zometa® Prods. Liab. Litig.*, No. 3:06-md-1760 (M.D. Tenn. May 5, 2011), ECF No. 4478 (Ex. 11) ("The Magistrate Judge is concerned that there appears to be a growing problem with substitution when a plaintiff dies . . . [and directs the Plaintiffs' Steering Committee] to remind all counsel of the requirements of the scheduling order concerning substitution when a Plaintiff dies."). Osborn Law's willful disregard of court orders and of the Federal Rules of Civil Procedure, further evidenced by the numerous cases in which Osborn Law has submitted

9

meritless defenses of its pattern of misrepresenting the status of its clients, warrants an award of sanctions in the form of NPC's full costs and fees.[6]

## II. Osborn Law Should Be Sanctioned Under 28 U.S.C. § 1927 and This Court's Inherent Authority for Forcing the Adjudication of a Plaintiff-less Case Before a Federal Court.

Plaintiff's counsel's conduct of filing a false complaint and forcing this Court to adjudicate this lengthy, resource-consuming litigation is also sanctionable under 28 U.S.C. § 1927 and this Court's inherent sanctioning power. Osborn Law's assertion that its client is a valid plaintiff in this matter lacks any legal or factual support and was made in bad faith, thereby satisfying the required showings for both sources of sanctions.[7] *See Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000).

### A. The representation that Mrs. Hogan is the Executor of her husband's estate is entirely without any legal or factual basis.

The Second Circuit has established that a claim must have "some legal and factual support" to avoid sanctions under § 1927 and the Court's inherent sanctioning power. *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999). Here, Osborn Law has maintained that Mrs. Hogan pursued this lawsuit as a representative of her husband's estate although she was never appointed an Executor as Rhode Island law requires, and she never opened an estate in her husband's name. *See* RI GEN. LAWS § 9-1-7 (1956); Ex. 4.

---

[6] NPC respectfully requests that this Court hold a hearing to determine the appropriate amount of sanctions, at which point NPC will provide documentary evidence of the costs and fees it incurred as a result of Osborn Law's pursuit of this lawsuit.

[7] The Second Circuit has determined that the analysis for granting sanctions according to § 1927 and that of granting sanctions according to a court's inherent sanctioning power are the same. *See Eisemann v. Greene*, 204 F.3d 393, 395-96 (2d Cir. 2000). Accordingly the discussion in this section applies to both sources of sanctions.

As discussed above, it is well established that it is counsel, rather than the client, who bears the responsibility to determine whether appropriate facts exist to support a legal claim submitted to a court. *See, e.g.*, *Kirk Capital Corp.*, 16 F.3d at 1492 (counsel is responsible to know whether facts give rise to a legal claim); *Harris v. Se. Pa. Transp. Auth.*, No. Civ.A. 05-526, 2005 WL 1899501, at *5 (E.D. Pa. Aug. 8, 2005) (assertion of legal principles and matters of law fall solely within the duty of the attorney); *Blake v. Nat'l Cas. Co.*, 607 F. Supp. 189, 193 (C.D. Cal. 1984) (sanctions imposed on counsel because motion was unsupported by existing law). Minimal due diligence required Osborn Law to determine if Mrs. Hogan was in fact the Executor of her husband's estate under Rhode Island law. Plaintiff's counsel's failure to conduct even a basic inquiry into the law governing a Rhode Island resident's third-party standing led to the extensive litigation of claims without a lawful basis, conduct worthy of sanctions. *See In re 60 East 80th St. Equities*, 218 F.3d 109, 115-16 (2d Cir. 2000) (debtor's clear lack of standing was evidence of the meritlessness of counsel's claims).

    B.    <u>Plaintiff's counsel's pursuit of this litigation, notwithstanding their client's lack of standing, is demonstrative of a sanction-worthy improper purpose.</u>

Actions made in bad faith are those that are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Schlaifer*, 194 F.3d at 336. Where there is a claim entirely lacking merit, bad faith on behalf of counsel is inferred. *See In re 60 East*, 218 F.3d at 115-16 (citing *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991)). Here, such an inference is warranted. There is no good faith explanation for Osborn Law's attorneys' failure to determine the standing of their client while pressing ahead with this litigation for seven years. *See Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 190

(E.D.N.Y. 2005) (court considered the length of pursuit of a meritless claim before concluding counsel acted in bad faith).

Abundant evidence shows that plaintiff's counsel's conduct was not accidental. Osborn Law has a history of pursuing the Aredia®/Zometa® litigation on behalf of purported "executors" and "personal representatives" who in fact were never properly appointed. *See, e.g.*, Dismissal Order, *Carter v. Novartis Pharm. Corp.*, No. 4:12-cv-605-DPM (E.D. Ark. June 4, 2013), ECF No. 54 (dismissing case after Mr. Osborn failed to properly substitute his deceased client and left the case without a valid plaintiff for over three years) (Ex. 12). Osborn Law's extensive history, coupled with its meritless assertions that its client, Mrs. Hogan, had standing to pursue this matter, is more than sufficient evidence to demonstrate that Osborn Law acted in bad faith worthy of sanctions.

## CONCLUSION

For the foregoing reasons, NPC respectfully requests sanctions on Osborn Law, P.C., in the amount of the costs, expenses, and fees NPC incurred in litigating this matter.

Dated:  August 13, 2013                                Respectfully submitted,

/s/ Bruce J. Berger
Bruce J. Berger
bberger@hollingsworthllp.com
Robert E. Johnston
rjohnston@hollingsworthllp.com
   HOLLINGSWORTH LLP
   1350 I Street NW
   Washington, DC  20005
   Telephone:  202-898-5800
   Facsimile:  202-682-1639

Jacqueline M. Bushwack
jacqueline.bushwack@rivkin.com
   RIVKIN RADLER LLP
   926 RXR Plaza
   Uniondale, NY  11556
   Telephone:  516-357-3096
   Facsimile:   516-357-3333

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of August, 2013, a true and correct copy of the foregoing Defendant Novartis Pharmaceuticals Corporation's Motion For Sanctions was filed with the Clerk of Court via the Court's ECF system, which will automatically provide notice of such filing to the following counsel:

>Daniel A. Osborn, Esq.
>Osborn Law, P.C.
>295 Madison Avenue
>New York, NY 10017
>212-725-9800

>s/ Bruce J. Berger
>Bruce J. Berger
>(bberger@hollingsworthllp.com)
>  HOLLINGSWORTH LLP
>  1350 I Street, N.W.
>  Washington, DC 20005
>  (202) 898-5800
>  (202) 682-1639 (fax)

>*Attorney for Defendant*
>*Novartis Pharmaceuticals Corporation*